Salim S. TADRUS, R.Ph., Sam's Prescription Shop, Inc., Appellants,

v.

MISSOURI BOARD OF PHARMACY, Respondent.

No. WD 45464.

Missouri Court of Appeals, Western District.

Feb. 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

Ronald Jenkins, St. Louis, James W. Gallaher, II, Jefferson City, for appellants.

William L. Webster, Atty. Gen., Audrey L. Hanson, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and HANNA, JJ.

KENNEDY, Presiding Judge.

Salim Tadrus and Sam's Prescription Shop, Inc., appeal the decision of the circuit court affirming the suspension of Mr. Tadrus's pharmacist's license for three months, followed by five years probation, and the placing of Sam's Prescription Shop on probation for five years.

On January 31, 1986, the State Board of Pharmacy (hereinafter "the Board") filed a complaint with the Administrative Hearing Commission ("the AHC") seeking a hearing and determination that Mr. Tadrus's pharmacist's license and the pharmacy permit of Sam's Prescription Shop, Inc., were subject to revocation or suspension pursuant to section 338.055 RSMo Supp.1984. Salim Tadrus is a registered pharmacist and the owner of three pharmacies named Sam's Prescription Shop, two of them in Moberly and a third in Brookfield. The complaint grew out of inspections of the Sam's locat-ed at 513 West Reed in Moberly, Missouri (which we will call Sam's #1 to avoid confusion), carried out by the Board in January and July of 1985. A hearing on the first amended complaint was held and Commissioner Paul R. Otto issued findings of fact, conclusions of law and a statement of the case on June 19, 1989. Commissioner Otto found that Mr. Tadrus and Sam's Prescription Shop, Inc. were subject to discipline pursuant to section 338.055.2, subsec. 5, 6 and 15 and section 338.285 RSMo 1986 [1] for some or all of the conduct charged in Counts II, V, and VI of the six count complaint. Section 338.055.2, in pertinent part, provides:

2. The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter ... for any one or any combination of the following causes:

(5) Incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by this chapter;

(6) Violation of, or assisting or enabling any person to violate, any provision of this chapter, or of any lawful rule or regulation adopted pursuant to this chapter;

(15) Violation of the drug laws or rules and regulation of this state, any other state or the federal government;

On September 24, 1989, a hearing was held before the Board to determine the appropriate discipline for Mr. Tadrus and Sam's Prescription Shop, Inc. On October 2, the Board issued its findings of fact, conclusions of law and disciplinary order. The Board ordered that Mr. Tadrus's license be suspended for three months, followed by a five year period of probation. The pharmacy permit of Sam's Prescription Shop, Inc. was placed on probation for five years. Both the Board on one side and Mr. Tadrus and Sam's Prescription Shop, Inc.

1. All future statutory references will be to RSMo 1986 unless otherwise noted.

appealed those sections of the order that were ruled against them to the circuit court. The Circuit Court of Cole County affirmed the decisions of the AHC and the Board. Mr. Tadrus and Sam's Prescription Shop, Inc. then appealed to this court.

## I.

We deal first with appellants' constitutional challenge. Mr. Tadrus contends that he was denied due process of law by the Board's failure to promulgate guidelines or standards which would have informed him what actions would subject him to discipline. Mr. Tadrus asserts that section 338.-055.2(5) is insufficient on its own to alert pharmacists as to what the Board will consider to be a violation, and that determinations made by the Board without written standards are arbitrary, capricious, and a violation of due process. The Board of Pharmacy did promulgate guidelines four months after the inspections of Sam's Prescription Shop in 1985.

■ Mr. Tadrus's failure to raise this constitutional issue at the administrative hearing level is not fatal to his claim. Mr. Tadrus did raise this issue at the circuit court level. A constitutional challenge must be raised at the earliest possible stage or it is waived. *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372 (banc. 1949). Since an administrative hearing commission is not empowered to determine the constitutionality of statutes, a party is not required to raise those issues at that level. *Duncan v. Missouri Board of Architects, Professional Engineers & Land Surveyors*, 744 S.W.2d 524, 531 (Mo. App.1988).

■ We review the constitutional challenge to see if it is substantial, in which case jurisdiction would vest in the Missouri Supreme Court. Mo. Const. Art. V, Sec. 3. If the challenge is merely colorable, we retain jurisdiction. *Duncan*, 744 S.W.2d at 531.

■ While the question whether the statute is unconstitutionally vague has not been ruled on in the area of this particular statute, it has come up in relation to other licensing statutes. In *Duncan v. Missouri Board of Architects*, the appellants claimed the licensing statute for engineering licenses was so vague it violated due process. The statute provided for discipline for acts of "gross negligence." The court held that this challenge was merely colorable, pointing to instances where courts upheld similar statutes which used terms such as "unprofessional and dishonorable conduct", "bad moral character", and "misconduct or dishonesty." *Id.* at 532 (citations omitted). The reasoning behind these decisions is equally applicable here. "It is indeed impossible to define or categorize all the acts which might constitute terms such as "unprofessional conduct" or "gross negligence." " *Id.* at 532 (citation omitted). "The crucial aspect is that the legislature establish minimal guidelines to govern law enforcement or, in this case, licensing discipline." *Id.* at 531 (citations omitted). Every infraction found by the AHC was a violation of a statute and/or regulation in effect at the time of the inspections. Mr. Tadrus can hardly assert that he was unaware of the regulations and statutes governing the conduct of licensed pharmacists at the time of the inspections.

■ We next turn to appellants' other points on appeal, the majority of which challenge the AHC's findings as not supported by the evidence. This court reviews the findings of the administrative agency, not the decision of the circuit court. *Americare Systems v. Missouri Dept. of Social Services*, 808 S.W.2d 417, 419 (Mo.App. 1991). We reverse the decision of the agency "only where no substantial and competent evidence exists to support it, where the agency has abused its discretion or where the agency has acted arbitrarily, capriciously or unreasonably," *Id.* Substantial evidence is evidence which, if believed, would have a probative force upon the issues. *Brooks v. General Motors Assembly Div.*, 527 S.W.2d 50, 53 (Mo.App. 1975).

## II.

■ Mr. Tadrus first complains about the AHC's finding that he had violated

section 338.250 and 4 C.S.R. 220–2.010(1)(C) [2] by failing to have on hand the current revision of the United States Pharmacopeia (U.S.P.) and National Formulary (N.F.) at the January 22, 1985 inspection of Sam's # 1. A pharmacy is required by section 338.250 to keep on file two reference books. One is "the latest decennial revision of the United States Pharmacopeia," and the other is "the latest edition of the National Formulary."

A regulation (4 C.S.R. 220–2.010(1)(C)) requires the pharmacy to maintain "at least one (1) U.S.P. (current revision), one (1) N.F. (current revision)."

On January 22, 1985, an inspector found that Sam's Prescription Shop, Inc., had on hand a 1980 edition of the United States Pharmacopeia, but this was not the latest revision, or the current revision. A new revision of the two books (now published in a single volume) had become available in October, 1984. The cover of the newest revision announced it was "(o)fficial from January 1, 1985."

Appellant says he was in compliance with the statute in having on hand the 1980 edition of the U.S.P. This edition said on its cover, "Official from July 1, 1980." This was not the latest revision, he admits, but he underlines the word "decennial" in the statutory phrase "latest decennial revision," and argues he was in compliance since his revision was less than ten years old. Apparently when this statute was enacted, the U.S.P. was revised every decade, but then it was changed to five-year intervals, so there is no "decennial revision" of the book.

We are faced with a statute which, if read literally, does not make sense. This court, in *Bank of Belton v. State Banking Board*, 554 S.W.2d 451, 456 (Mo.App.1977), stated:

> ... the legislature never intends to enact an absurd law, incapable of being enforced, and on the principle that the reason of the law should prevail over the

letter of the law, courts on numerous occasions, confronted with ambiguous or contradictory language, have adopted a constructor which modifies the literal meaning of the words, and in extreme cases have stricken out words or clauses regarded as improvidently inserted, in order to make all sections of a law harmonious with the plain intent or apparent purpose of the legislature. (quoting *City of Joplin v. Joplin Water Works Co.*, 386 S.W.2d 369, 373 (Mo.1965)).

The plain intent of the legislature was to require pharmacies to have on hand the latest revision of the U.S.P.. We, therefore, read the statute as if the word "decennial" was not there. Under this interpretation of the statute, the Commissioner's finding is sustained.

### III.

■ As to Mr. Tadrus's failure to have the latest edition of the National Formulary, the Administrative Hearing Commissioner must also be sustained. The statute required the pharmacy to have on file the latest edition of the National Formulary, and the regulation made the same requirement. The pharmacy's copies of the National Formulary on January 22, 1985 were out of date. The current edition had been available since the preceding October, and had become "official" on January 1, 1985.

### IV.

■ On June 3, 1985, the Board's inspector found Mr. Launce Mustoe, Jr., a licensed pharmacist, working at Sam's # 1. Mr. Mustoe's pharmacist's license was not displayed on the premises, as required by section 338.080. There really is no dispute about this fact. The Administrative Hearing Commissioner's finding to that effect is supported by competent and substantial evidence. As the "pharmacist in charge" of Sam's # 1, Mr. Tadrus was responsible to see that the licenses of all pharmacists employed were conspicuously displayed in

---

**2.** All references to the Code of State Regulations are to the C.S.R. in effect at the time of the inspections, in January and July of 1985. The C.S.R. has since changed, and some sections may have been moved or revised. Where necessary, we will give the current C.S.R. number in a footnote. 4 C.S.R. 220–2.010(1)(C) is now 4 C.S.R. 220–2.010(1)(D).

the pharmacy. The failure to display Mr. Mustoe's license in Sam's # 1 was chargeable to Mr. Tadrus. 4 C.S.R. 220–2.090(1)(D).[3]

## V.

■ The AHC found that Mr. Tadrus did not comply with the recordkeeping regulations (4 C.S.R. 220–2.080) with respect to refills of prescriptions of medicines. When records are kept on computers, the rule requires a daily computer printout of refill information. This printout shall be "verified, dated and signed by the dispensing pharmacist in the same manner as signing any other legal document." The rule says: "The pharmacist shall verify that the information set forth on the printout is correct." The printout must also include, for each prescription, the dispensing pharmacist's code or initials.

There was evidence that Mr. Tadrus failed to "verify" some of the daily printouts. The term "verify," as used in this rule, merely means to confirm the accuracy of the printout; the term does not include the idea of an oath. The inspector's testimony was that several of the refill entries on daily printouts, when checked against the original prescriptions, were inaccurate. We hold, as found by the AHC, the inaccuracies were evidence of Mr. Tadrus's failure to verify, and the AHC's fact finding is supported by the evidence.

## VI.

■ Section 338.059.1 requires a label on each container in which prescription drugs are delivered to a patient. The label is to contain, among other information, "(t)he exact name and dosage of the drug dispensed." The Board charged, and the AHC found, that Mr. Tadrus had violated this statute in failing to show the exact name of the generic drug dispensed. The computer-generated label showed on one line: "Generic for Colace." The next line said: "100 DSS 100 MG." DSS is the chemical name for docusate sodium. The

expert, Mr. Mallams, testified DSS was the chemical name for Colace. The label also identified the drug by its National Drug Code number.

Apparently, Mr. Tadrus's offense was to fail to write out in full on the label the name "docusate sodium." DSS seems to be the accepted chemical designation of the product. The ordinary patient would understand "DSS" as well as he would understand "docusate sodium." To understand either, he would have to consult a reference book or an expert. The use of an accurate, unambiguous abbreviation, unmistakably identifying the drug, satisfies the requirement of the statute. The statute's "exact" does not necessarily mean full and unabbreviated. The AHC's conclusion of law that this label did not satisfy the requirement of section 338.059.1(7) was erroneous, and is reversed.

## VII.

Mr. Tadrus was found on a few occasions from 1979 to 1982 to have delivered to a physician, or to the physician's nurse, certain prescriptions of Dilaudid, without any pharmacy label such as is required by section 338.059.1. The finding of fact is supported by the evidence, and in fact is not disputed.

## VIII.

■ Mr. Tadrus was found on two occasions to have made generic substitutions where such substitutions were improper. Section 338.056 allows substitution of a generic drug for a brand-name drug under certain circumstances, but section 338.057 prohibits the substitution of a generic drug for certain drugs included in a list made up and published in accordance with the statute. This list is called the "Negative Generic Drug Formulary."

There was evidence before the AHC indicating that Mr. Tadrus furnished generic drugs in the place of the prescribed brand-name Coumadin and brand-name drug Or-

---

**3.** The regulation for pharmacists-in-charge has been revised substantially, but it is still found at

4 C.S.R. 220–2.090.

nade. There was no equivalent generic drug for either, according to the Negative Generic Drug Formulary. Mr. Tadrus's defense, supported by other testimony, was that he had called the respective prescribing physicians and had gotten permission to make the substitutions. If he did so, the oral telephone prescription would have served as a new prescription. There was nothing in Mr. Tadrus's records, however, that made it clear that he had received the physicians' approval. The AHC was the arbiter of witness credibility, and we are unable to say the AHC was wrong in rejecting Mr. Tadrus's version. We hold that the finding that Mr. Tadrus had made improper generic substitutions was supported by competent and substantial evidence.

### IX.

Mr. Tadrus and Sam's Prescription Shop, Inc., argue, finally, that the punishment assessed by the Board—i.e., three months' suspension of his pharmacist's license and five years' probation for Sam's Prescription Shop, Inc.,—was excessive, arbitrary and capricious. The penalty is left largely to the discretion of the Board, and the appellate court intercedes only where there is an abuse of discretion. *Missouri Real Estate Commission v. McCormick*, 778 S.W.2d 303 (Mo.App.1989). We are unable to say the Board's action in this case was an abuse of discretion. The idea of the administrative agency is that its members have a specialized knowledge of the profession they regulate. For that reason, the Board is better equipped than the courts to determine the gravity of the infractions of which Mr. Tadrus has been found guilty, and to determine the appropriate sanctions. Nonetheless, since we have reversed the AHC's finding with respect to the alleged label infraction, the case must be remanded to the Board for reconsideration of the sanctions imposed. The Board will have an opportunity to review the appropriateness of the penalty.

The decision is affirmed in part and reversed in part, and the case is remanded to the Board of Pharmacy for reconsideration of the sanctions imposed upon Mr. Tadrus and upon Sam's Prescription Shop, Inc.

All concur.