In the ESTATE OF Raymond
V. SHUH, Deceased.

No. ED 89849.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 29, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 10, 2008.

Application for Transfer Denied
April 15, 2008.

Elizabeth LaFlamme, Office of the Attorney General, St. Louis, MO, for Appellant.

Terry R. Rottler, Ste. Genevieve, MO, for Respondent.

The Department of Social Services, Mo HealthNet Division ("Division") appeals from the judgment dismissing the Division's claim for recovery of Medicaid assistance paid to Raymond V. Shuh's predeceased spouse, Lucille J. Shuh. The Division contends the trial court erred in dismissing the Division's claim because the trial court incorrectly concluded that Section 473.399.2, RSMo 2000,[1] the statute authorizing recovery of Medicaid assistance from the estate of the spouse of the deceased recipient, exceeds the allowable provisions for recovery under the Medicaid Act, 42 U.S.C. Section 1396p(b). We affirm.

The Division[2] provided Medicaid assistance benefits on behalf of Lucille J. Shuh in the amount of $153,180.59. Lucille J. Shuh died in April 2, 2002. No estate was opened for Lucille J. Shuh. She was survived by her husband, Raymond V. Shuh, who never received any Medicaid assistance. Raymond V. Shuh died on April 19, 2006.

Pursuant to Sections 473.398 and 473.399, which allow the Division to recover Medicaid assistance paid to a recipient's surviving spouse's estate, the Division filed a claim for recovery of Medicaid assistance against the Estate of Raymond V. Shuh. Following a hearing on the Division's claim, the trial court dismissed the claim finding "that while Section 473.399[.2] may authorize recovery of Medicaid Assistance from the estate of the spouse of the deceased recipient upon such spouse's death, that such section exceeds the allowable

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

2. On August 28, 2007, by operation of SB577, the name of the Division of Medical Services was changed to Mo HealthNet Division.

provisions for recovery under the Medicaid Act 42 U.S.C. Section 1396[p](b)." The Division now appeals.

Division contends the trial court erred in dismissing its claim because the trial court incorrectly concluded that Section 473.399.2 exceeds the allowable provisions for recovery under the Medicaid Act, 42 U.S.C. Section 1396p(b). The question before us, a question of first impression in Missouri, is whether the Division's claim against Raymond V. Shuh's estate was permissible under the Medicaid Act and the Missouri statutes implemented pursuant to the Medicaid Act. This issue presents a question of law, which we review *de novo. Edwards v. Hyundai Motor America,* 163 S.W.3d 494, 497 (Mo.App. E.D. 2005). In determining this issue, we must examine the federal Medicaid Act, as well as state statutes.

## I.  Federal Medicaid Act

Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act, later codified at 42 U.S.C. Section 1396 *et seq. Hutchings ex rel. Hutchings v. Roling,* 193 S.W.3d 334, 340 (Mo.App. E.D.2006). Medicaid is predicated upon the concept of "cooperative federalism." *Wisconsin Dept. of Health and Family Services v. Blumer,* 534 U.S. 473, 495, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). Thus, the Medicaid Act created a cooperative program under which the federal government reimburses state governments for a portion of the costs of providing medical assistance to low income recipients. *Hutchings,* 193 S.W.3d at 340; *Gillmore v. Illinois Department of Human Services,* 218 Ill.2d 302, 300 Ill.Dec. 78, 843 N.E.2d 336, 338 (2006). States are not required to participate in the Medicaid program. *Hutchings,* 193 S.W.3d at 340. Once they elect to do so, however, they must design their own plans and set reasonable standards for eligibility and assistance. *See* 42 U.S.C. Section 1396a(a)(17); *Hutchings,* 193 S.W.3d at 340–41; *Schweiker v. Gray Panthers,* 453 U.S. 34, 36, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). Such plans and standards must comport with all federal statutory and regulatory requirements. *Hutchings,* 193 S.W.3d at 340–41. Missouri has elected to participate in the Medicaid program. *Id.* at 341.

To qualify for Medicaid as a medically needy person, a person must have low income and low assets, and the person must "spend down" any resources so they do not exceed the statutory and regulatory limits. 42 U.S.C. Section 1396a(a)(17); Sections 208.010 and 208.215. "Spend down" requirements pose an obvious hardship to the spouses of medical assistance recipients, who face the prospect of being left with virtually nothing to live on once the couple's income and resources are reduced to the level necessary to qualify for Medicaid. To ameliorate that hardship to spouses of Medicaid recipients, Congress enacted the Medicare Catastrophic Coverage Act of 1988 ("MCCA") which includes provisions to financially protect the spouse who was not receiving medical assistance. These provisions, commonly called the spousal impoverishment provisions, allow the spouse to retain a certain level of resources and income and protect those assets from use as payment for medical care. See 42 U.S.C. Section 1396r–5.

The Medicaid Act affords an additional element of financial protection to the families of Medicaid recipients by limiting the circumstances in which a state may seek reimbursement for the payments it made on the recipient's behalf. The Medicaid Act, as amended by the Omnibus Budget Reconciliation Act of 1993 ("OBRA") expressly provides that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the

State plan may be made," except in three specified circumstances. 42 U.S.C. Section 1396p(b)(1). Those exceptions are:

(A) In the case of an individual described in subsection (a)(1)(B), the State shall seek adjustment or recovery from the *individual's estate* or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of the individual.

(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the *individual's estate,* but only for medical assistance consisting of—

(i) nursing facility services, home and community-based services, and related hospital and prescription drug services, or

(ii) at the option of the State, any items or services under the State plan.

(C)(i) In the case of an individual who has received (or is entitled to receive) benefits under a long-term care insurance policy in connection with which assets or resources are disregarded in the manner described in clause (ii), except as provided in such clause, the State shall seek adjustment or recovery from the *individual's estate* on account of medical assistance paid on behalf of the individual for nursing facility and other long-term care services.

42 U.S.C. Section 1396p(b)(1)(emphasis added). The Medicaid Act further provides that any adjustment or recovery under the exceptions contained in paragraph 42 U.S.C. Section 1396p(b)(1) may only be made after the death of the Medicaid recipient's surviving spouse, if he or she has one. 42 U.S.C. Section 1396p(b)(2).

The present case involves the application of the second exception as set forth in 42 U.S.C. Section 1396(b)(1)(B). In the exceptions, the statute focuses on the "individual's estate." Congress has determined that for the purposes of 42 U.S.C. Section 1396p(b), the definition of a deceased recipient's estate *shall* include all real and personal property and other assets included within the individual's estate as defined by the particular state's probate law. 42 U.S.C. Section 1396p(b)(4)(A). Where the deceased recipient received or is entitled to receive benefits under a long-term insurance policy in connection with which assets or resources are disregarded in the manner described in clause (ii) of subsection (b)(1)(C) of the statute, the definition of the deceased recipient's estate *shall* also include:

any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. Section 1396p(b)(4)(B). In addition, the Act provides that a state "may include, at the option of the State" this second, more expansive definition of estate to all cases, not just those involving long-term care insurance policies. *Id.*

## II. Missouri statutes

In response to the federal mandate of recovery of Medicaid assistance Missouri enacted Sections 473.398 and 473.399. Section 473.398 creates a debt for all public assistance, including Medicaid, paid out during the recipient's lifetime due upon the death of a recipient. Section 473.398.1 specifically provides that the "debt shall be collected as provided by the probate code of Missouri." Section 473.399.2 further provides that medical assistance benefits paid to a predeceased spouse "may be

recovered by filing a claim in the probate division of the circuit court against the decedent estate of the spouse of the deceased recipient upon such spouse's death as provided by the probate code of Missouri, chapters 472, 473, 474 and 475, RSMo." The statute also recognizes all limitations set out in 42 U.S.C. Section 1396p(b) by stating that "[c]laims shall not be filed under this section when collection of the state debt would be contrary to federal statutes for assistance programs in which federal funds are received." Section 473.399.6.

### III. Does the Medicaid Act prohibit spousal recovery?

The question of whether the federal statute explicitly prohibits spousal recovery under Section 473.399 involves interpretation of the Medicaid Act. Congressional intent is the guidepost to judicial interpretation of federal statutes. *Kidd v. Pritzel,* 821 S.W.2d 566, 568 (Mo.App. W.D.1991).

█ Congress had two important goals in enacting estate recovery with the passage of the OBRA and spousal impoverishment provisions with the passage of the MCCA. First, expanding estate recovery "furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services." *Belshe v. Hope,* 33 Cal.App.4th 161, 173, 38 Cal.Rptr.2d 917 (1995); *See also West Virginia v. U.S. Dept. of Health and Human Services,* 289 F.3d 281, 284 (4th Cir.2002)(holding it was Congress's intent that estate recovery would "replenish" Medicaid funds in the face of rapidly escalating medical costs). Second, the MCCA serves as part of the overall effort to not impoverish a Medicaid recipient's spouse during the spouse's lifetime. "According to the United States Supreme Court and the Congressional Record, the goal of the MCCA was to protect the community spouse from poverty, while protecting the Medicaid system from being abused by financially secure couples." *Poindexter v. State ex rel Dept. of Human Services,* 372 Ill.App.3d 1021, 311 Ill.Dec. 465, 869 N.E.2d 139, 148 (2007)(*citing Blumer,* 534 U.S. at 480, 122 S.Ct. 962).

To achieve these goals, Congress prohibited states from making recoveries from the individual estate of a Medicaid recipient until after the death of the recipient's surviving spouse. 42 U.S.C. Section 1396p(b)(2). The prohibition allows the assets of the Medicaid recipient's estate to support the surviving spouse during that spouse's lifetime. However, upon the death of the recipient's surviving spouse, the need for protection from impoverishment ceases and allowing a state to recover medical assistance benefits previously paid furthers the broader purpose of funding future services to the medically needy.

In arguing that the Medicaid Act does not allow for the recovery of Medicaid assistance from the recipient's surviving spouse's estate, Respondent relies on the case of *Hines v. The Department of Public Aid,* 221 Ill.2d 222, 302 Ill.Dec. 711, 850 N.E.2d 148 (2006). In *Hines,* the Illinois Supreme Court determined that the Illinois recovery statute used to seek recovery from the recipient's spousal estate exceeded the authority granted by 42 U.S.C. Section 1396p(b). Id. at 153–54. The court in *Hines,* however, noted that Illinois's spousal recovery provision contained a general definition of estate in cases not involving a long-term care insurance policy, thus distinguishing it from other states which found that the Medicaid Act permits recovery from the surviving spouse's es-

tate. *Id.* at 154–55.[3] The *Hines* court examined the language of 42 U.S.C. Section 1396p(b)(1) and held recovery is permissible only in the exact circumstances set forth in the statute. *Id.* The court held that because the Illinois probate statutes did not contain the more expansive definition of estate as it applied to the facts the case where a long-term care insurance policy was not involved, the Illinois Department of Public Aid did not have authority to seek recovery from the recipient's surviving spouse's estate. *Id.* The *Hines* court noted that the Medicaid Act bestows on states the option of defining the estate of a Medicaid recipient more expansively and distinguished its case from cases from other states that have the more expansive definition of estate in their probate laws.[4] *Id.* at 154.

In particular, the court in *Hines* specifically distinguished its case from *In re Estate of Thompson*, 586 N.W.2d 847 (N.D. 1998). *Hines*, 302 Ill.Dec. 711, 850 N.E.2d at 154–55. In *Thompson*, in analyzing the Medicaid Act and "cooperative federalism," the North Dakota Supreme Court noted that Congress granted states the option to expand the definition of "estate" under 42 U.S.C. Section 1396p(b)(4) and held that North Dakota's definition of estate "encompass[ed] the department's claim against the estate of a deceased spouse of a deceased recipient of medical assistance benefits." *Thompson*, 586 N.W.2d at 850. The *Thompson* court found that "[t]he 1993 amendments, and our interpretation of them, reflect the Congressional purpose to broaden states' estate recovery programs." *Id.* at 851. The court declared that allowing states to trace the assets of recipients of medical assistance and recover the benefits paid from the estate of the

---

**3.** The provision for recovery in Illinois, Section 5–13 of the Illinois Public Aid Code, read, in pertinent part:

> The term "estate," as used in this Section, with respect to a deceased person, means all real and personal property and other assets included within the person's estate, as that term is used in the Probate Act of 1975; however, in the case of a deceased person who has received ... benefits under a long-term care insurance policy ... "estate" also includes any other real and personal property and other assets in which the deceased person had any legal title or interest at the time of his or her death (to the extent of that interest), including assets conveyed to a survivor, heir, or assignee of the deceased person through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

305 Ill. Comp. Stat. 5/5–13 (2004).

**4.** *In re Laughead*, 696 N.W.2d 312, 315 (Iowa 2005)(under Iowa Code Section 249A.5(2)(c), the estate of a medical assistance recipient includes any real property, personal property, or other asset in which the recipient had any interest at the time of the recipient's death, to the extent of such interests, including but not limited to interests in jointly held property); *Estate of DeMartino v. Div. of Medical Assistance & Health Services*, 373 N.J.Super. 210, 861 A.2d 138, 143–44 (2004)(N.J. Stat. Ann. Section 30:4D–7.2 defines deceased Medicaid recipient's estate to include "assets conveyed to a survivor, heir or assign of the recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement"); *State of Nevada Department of Human Resources v. Ullmer*, 120 Nev. 108, 87 P.3d 1045, 1050 (2004)(statutes expanded the definition of "estate" to include "assets conveyed to a survivor, heir or assign of the [deceased][Medicaid] recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement"); *In re Estate of Jobe*, 590 N.W.2d 162, 164 (Minn.App.1999)(Minnesota statute expressly allows claims for recovery of medical assistance costs rendered for predeceased spouse up to the value of assets that "were martial property or jointly owned property ... during the marriage"); *In re Estate of Knudson*, 132 Idaho 213, 970 P.2d 6, 9 (1998)(Medicaid recipient's estate defined by Idaho statute to include community property of surviving spouse and Medicaid Act allows recovery from surviving spouse's estate to the extent of such community property).

recipient's surviving spouse furthers the broad purpose of providing medical care for the needy. *Id.*

Other states also allow for spousal recovery. In *Jobe,* the Minnesota Court of Appeals, relying on *Thompson,* found the broad definition of "estate" in Minnesota's probate law included "non-probate assets" and therefore, the statutory provisions allowing for the recovery medical assistance benefits paid to a predeceased spouse from a surviving spouse's estate was consistent with federal law and not preempted by 42 U.S.C. Section 1396(b)(4)(B). *Id.* at 166–67. The court held the congressional intent of the OBRA was to "broaden states' estate recovery programs and allow states to trace assets of medical assistance recipients and recover benefits paid when recipient's surviving spouse dies." *Id.* at 166. The *Jobe* court concluded that the purposes of both the MCCA and OBRA could be fulfilled through recovery from a surviving spouse's estate because once the surviving spouse dies the need to protect that spouse from impoverishment ends and allows for the broader purpose of funding future services to the medically needy. *Id.*

The Minnesota Court of Appeals reiterated the holding in *Jobe* in *In re Estate of Gullberg,* 652 N.W.2d 709 (Minn.App.2002). In *Gullberg,* the court again stated that a state may enact legislation allowing spousal recovery if the surviving spouse's estate contains property or assets in which the Medicaid recipient had some legal title or interest at the time of the recipient's death. *Id.* at 712. The *Gullberg* court held that permitting recovery from a surviving spouse's estate furthered the purpose of the Medicaid Act "by protecting the surviving spouse's right to enjoy and use assets during his or her lifetime, while enabling the [state] to recoup a portion of its expenditures." *Id.* at 714.

We find the opinions in *Thompson* and *Jobe* persuasive. Thus, we conclude that Congress intended the term "estate" can have a broad meaning under the Medicaid Act allowing for spousal recovery. By including probate and non-probate transfers on death in the definition of "estate," the purpose of the Medicaid Act will be better achieved. The purposes of OBRA and MCCA are both served by allowing the state to recover medical assistance benefits paid to a predeceased spouse from a surviving spouse's estate, to the extent the assets contained in the surviving spouse's estate were assets of the recipient individual's estate or jointly owned by the couple during their marriage. Therefore, we find the Medicaid Act allows a state to seek recovery from any remaining assets from the recipient individual's estate through the estate of the recipient's surviving spouse where the more expansive definition of "estate" is used in the state's probate statutes.

## IV. Definition of "Estate" in Missouri

The Division only has authority to seek recovery under Section 473.399.2 if the definition of "estate" in Missouri is broad enough to encompass non-probate transfers. Section 472.010 contains the definition of "estate" in Missouri. "Estate" is defined as the "real and personal property of the decedent or ward, as from time to time changed in form by sale, reinvestment or otherwise, and augmented by any accretions and additions thereto and substitutions therefor, and diminished by any decreases and distributions therefrom." Section 472.010(11).

The Division argues that Missouri's definition of "estate" is expanded to include non-probate transfers [5] by Section 461.300.

---

**5.** A non-probate transfer is "a transfer of

property taking effect upon the death of the

Pursuant to Section 461.300, beneficiaries who receive non-probate transfers of a decedent's property shall be liable to account to the personal representative for a pro rata share of the value of all such property received to the extent necessary to discharge claims remaining unpaid after application of the decedent's estate. *In re Hoffman,* 23 S.W.3d 646, 649 (Mo.App. E.D.2000). However, Section 461.300 gives creditors rights only when a decedent's probate estate is insufficient. Furthermore, an action under Section 461.300 must be "commenced within eighteen months following the decedent's death." Section 461.300.2. The specific limitations of Section 461.300 do not expand the definition of "estate" to include all non-probate transfers. The Division's argument fails.

Missouri's definition of "estate" is not broad enough to encompass the expanded definition of "estate" as provided by 42 U.S.C. Section 1396p(b)(4)(B), which includes "such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." Thus, Missouri's statutory definition of "estate" does not allow for spousal recovery and Section 473.399.2 conflicts with the Medicaid Act. "Claims shall not be filed under [Section 473.399] when collection of the state debt would be contrary to federal statutes." Section 473.399.6. The trial court properly dismissed the Division's claim against the Estate of Raymond V. Shuh.

The judgment is affirmed.

owner, pursuant to a beneficiary designation." Section 461.005(7).

1. Breckenridge, J., was a member of this Court at the time this case was submitted.

KATHIANNE KNAUP CRANE, P.J. and KENNETH M. ROMINES, J., concur.