OANH THILE HUYNH, Appellant,

v.

J. Scott KING, Conservator Ad Litem
for Thuc Tu Huynh, Respondent.

No. WD 69046.

Missouri Court of Appeals,
Western District.

Oct. 14, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 25, 2008.

Mary McCormick, Liberty, MO, for Appellant.

J. Scott King, Independence, pro se.

Lasandra F. Morrison, Kansas City, MO, for Defendant, Missouri Attorney General's Office.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

Oanh Thile Huynh appeals the judgment of the Probate Division of the Circuit Court dismissing, for lack of jurisdiction, her amended petition for declaratory judgment to increase spouse allowance, for special conservator in protective arrangement, and for an order dispensing with conservatorship. She claims that the probate court erred in dismissing her petition because federal Medicaid law grants authority to a court to issue a support order determining the community spouse resource and income allowances for the purpose of Medicaid eligibility. The judgment is affirmed.

## Facts Alleged in Petition and Procedural History

Oanh Thile Huynh and her husband, Thuc Tu Huynh, fled their native Vietnam in 1975 and were naturalized as United States citizens in the early 1980's. Mr. Huynh suffered a hemorrhagic stroke on March 17, 2007, and since that time, has resided in a skilled nursing facility in Independence. He is expected to continue to require skilled nursing-level care. Mr. Huynh receives Social Security Disability Insurance benefits of $1557 per month. Mrs. Huynh anticipates filing a Medicaid application with the Family Support Division on behalf of Mr. Huynh for medical assistance and nursing home benefits.

Mrs. Huynh resides in the family home in Independence. The Huynhs' two children, ages 18 and 24, also reside in the family home. Their younger child is a dependent for income tax purposes and is enrolled as a full time student at Rockhurst University in Kansas City.

On July 2, 2007, Mrs. Huynh filed a petition against her husband in the Probate Division of the Circuit Court of Jackson County for declaratory judgment to increase spouse allowance, for special conservator in protective arrangement, and for an order dispensing with conservatorship. A hearing was held on Count III—appointment of guardian and conservator—and the probate court found Mr. Huynh totally incapacitated and totally disabled. Letters of guardianship and conservatorship were issued to Mrs. Huynh. Additionally, the probate court appointed J. Scott King, Esq. as conservator ad litem for Mr. Huynh in regard to Mrs. Huynh's petition for spousal allowance.

On October 1, 2007, Mrs. Huynh filed her amended petition for spousal allowance. The amended petition contained two counts—Count I for declaratory judgment

to increase spousal allowance and to divide assets and Count II to appoint a special conservator to transfer Mr. Huynh's interest in real estate to his spouse pursuant to section 442.035, RSMo 2000. Notice of the petition for spousal allowance was provided to the State of Missouri, but the State did not seek to intervene or participate in the matter. The probate court heard evidence on the financial need projections for Mrs. Huynh and took the matter under advisement.

On November 2, 2007, the probate court dismissed Mrs. Huynh's amended petition for lack of subject matter jurisdiction finding that the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r–5,[1] does not provide states an independent cause of action for court-ordered support or division of assets. This appeal by Mrs. Huynh followed.

## Points on Appeal

Mrs. Huynh raises two points on appeal challenging the probate court's dismissal of her amended petition for lack of subject matter jurisdiction. First, she contends that federal Medicaid law grants authority to the probate court to issue a support order that determines the community spouse resource and income allowances for purposes of Medicaid eligibility. Additionally, she asserts that the probate court had jurisdiction in this case because it possesses unrestricted equitable authority to resolve matters related to probate, which includes the power to order declaratory relief for the support of a protected person's spouse. The points are addressed together.

**1.** All statutory references to U.S.C. are to Supp.2008 unless otherwise indicated.

**2.** In 2007, the Medicaid program in Missouri was renamed "MO HealthNet" under Senate

## Standard of Review

"Dismissal for lack of subject-matter jurisdiction is proper whenever it appears, by suggestion of the parties or otherwise, that the court is without jurisdiction." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003). *See also* Rule 55.27(g)(3). "The quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction." *Mo. Soybean Ass'n*, 102 S.W.3d at 22. Where, as here, the facts are uncontested and the question of subject-matter jurisdiction of the court is purely a question of law, review of dismissal of the petition is *de novo*. *Id.* "[T]he trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground." *Id.*

## Discussion

Medicaid is a joint federal-state program that provides medical assistance to needy persons who are unable to meet the cost of medical care. *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002)(citing 42 U.S.C. § 1396 *et seq.* (1994 ed. and Supp. V)); *In re Estate of Shuh*, 248 S.W.3d 82, 84 (Mo.App. E.D.2008). If a state elects to participate in the Medicaid program, it designs its own plan, setting reasonable standards for eligibility and assistance. *Id.* A state's plan must comply with all federal statutory and regulatory requirements. *Id.* "Missouri has elected to participate in the Medicaid program."[2] *Shuh*, 248 S.W.3d at 84.

Bill 577. For clarity, this opinion will use the term "Medicaid" to refer to both the federal Medicaid program and the MO HealthNet program.

In formulating the standards for eligibility and assistance, "[s]tates must 'provide for taking into account only such income and resources as are ... *available* to the applicant.'" *Blumer*, 534 U.S. at 479, 122 S.Ct. 962 (quoting 42 U.S.C. § 1396(a)(17)(B)). Prior to the enactment of the Medicare Catastrophic Coverage Act (MCCA) in 1988, states generally considered the income of either spouse and the assets held jointly by the couple to be available to the institutionalized spouse for the costs of care of that spouse. *Id.* at 479–80, 122 S.Ct. 962. On the other hand, assets held individually by the community spouse (the spouse who continues to reside in the community) were not treated as available to the institutionalized spouse for purposes of Medicaid eligibility. *Id.* at 480, 122 S.Ct. 962. As a result of these practices, "[m]any community spouses were left destitute by the drain on the couple's assets necessary to qualify the institutionalized spouse for Medicaid and by the diminution of the couple's income posteligibility to reduce the amount payable by Medicaid for institutional care." *Id.* "Conversely, couples with ample means could qualify for assistance when their assets were held solely in the community spouse's name." *Id.*

In enacting the MCCA, "Congress sought to protect the community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance." *Id.* The so-called "spousal impoverishment provisions" of the MCCA allow the community spouse to reserve sufficient income and resources to meet his or her minimum monthly maintenance needs without jeopardizing the institutionalized spouse's Medicaid eligibility. *Id.* at 478, 122 S.Ct. 962; *Shuh*, 248 S.W.3d at 84.

Specifically, one component under the MCCA, the Community Spouse Monthly Income Allowance (CSMIA), allows the transfer of income from the institutionalized spouse to the community spouse to meet the latter's basic needs. *Blumer*, 534 U.S. at 482, 122 S.Ct. 962 (citing 42 U.S.C. § 1396r–5(d)(1)(B)). The amount transferred is not considered available for the institutionalized spouse's care. *Id.* The MCCA provides a formula for computation of the CSMIA, with an exception for "[c]ourt ordered support," referring to an order entered against an institutionalized spouse for monthly income for the support of the community spouse. 42 U.S.C. § 1396r–5(d)(2) & § 1396r–5(d)(5).

Additionally, "[f]or purposes of establishing the institutionalized spouse's Medicaid eligibility, a portion of the couple's assets is reserved for the benefit of the community spouse." *Blumer*, 534 U.S. at 482, 122 S.Ct. 962 (citing 42 U.S.C. § 1396r–5(c)(2)). This reserved amount is the Community Spouse Resource Allowance (CSRA), which is calculated using, in part, the greatest of four alternatives. 42 U.S.C. § 1396r–5(f)(2). *See also Amos v. Estate of Amos*, No. ED90967, 2008 WL 4133864, at *2 (Mo.App. E.D. Sept.9, 2008). One alternative is "the amount transferred under a court order under paragraph (3)," referring to an order entered against an institutionalized spouse for the support of the community spouse or a family member. 42 U.S.C. § 1396r–5(f)(2)(A)(iv) & § 1396r–5(f)(3). *See also Amos*, 2008 WL 4133864, at *2.

▮▮ Mrs. Huynh contends that the two provisions in the MCCA referring to a "court order" create a separate, judicial remedy for the community spouse to increase his or her CSMIA and/or CSRA. Mrs. Huynh's contention is without merit. Under the doctrine of primary jurisdiction, a court will not decide a controversy involving a question within the jurisdiction of an administrative tribunal until after the

tribunal has rendered its decision "(1) where administrative knowledge and expertise are demanded; (2) to determine technical, intricate fact questions; [and] (3) where uniformity is important to the regulatory scheme." *Killian v. J & J Installers, Inc.,* 802 S.W.2d 158, 160 (Mo. banc 1991). The doctrine of exhaustion of remedies is a jurisdictional requirement that all remedies be exhausted at the administrative level before applying to the courts for relief. *Pettigrew v. Hayes,* 196 S.W.3d 53, 56 (Mo.App. W.D.2005)(citing *Green v. City of St. Louis,* 870 S.W.2d 794, 796 (Mo. banc 1994)). "If all administrative remedies have not been exhausted, the circuit court lacks subject matter jurisdiction to judicially review the administrative decision." *Id.*

Congress has declared that the determination of eligibility for medical assistance under the State plan "shall be made by the State or local agency administering the State plan." 42 U.S.C. § 1396a(a)(5). In Missouri, that agency is the Missouri Department of Social Services, Family Support Division. § 208.010, RSMo Cum. Supp.2007. Section 208.010.6 provides that when determining the eligibility of institutionalized spouses for medical assistance benefits, the Division "shall by rule or regulation implement federal law and regulations which shall include but not be limited to the establishment of income and resource standards and limitations." Furthermore, the MCCA provides for administrative review of the administering agency's decisions regarding eligibility for medical assistance of an institutionalized spouse. 42 U.S.C. § 1396r–5(e). Once the agency determines eligibility, it must notify the applicant and the spouse of the amount of allowances and how they were computed. 42 U.S.C. § 1396r–5(e)(1). If either spouse is dissatisfied with the agency's determination of the CSMIA or the CSRA, such spouse is entitled to a fair hearing. 42 U.S.C. § 1396r–5(e)(2). Sec-

tion 208.010.8, RSMo Cum.Supp.2007, provides that any hearing required by the MCCA be conducted pursuant to section 208.080. Finally, section 208.100, RSMo 2000, creates a right of, and procedure for, judicial review if the applicant is still dissatisfied with the Division's determination made under section 208.080. *See also Amos,* 2008 WL 4133864, at *2.

The Division has primary jurisdiction to determine the eligibility of institutionalized spouses for medical assistance benefits, which necessarily includes determination of the community spouse allowances. Administrative agencies are better equipped than courts to decide legal issues affecting their agencies. *See Tadrus v. Mo. Bd. of Pharmacy,* 849 S.W.2d 222, 228 (Mo.App. W.D.1993). Application of Medicaid statutes and regulations demands the administrative expertise and specialized knowledge of the Division, which is specifically charged by Congress to administer the Medicaid program. *Amos,* 2008 WL 4133864, at *2. The "court order" language of the MCCA, without any further explanation, is insufficient to confer parallel jurisdiction on a probate court. *Id.See also Ark. Dep't of Health & Human Servs. v. Smith,* 370 Ark. 490, 262 S.W.3d 167 (2007). "We are not persuaded that Congress or the General Assembly intended to invite forum shopping on issues relating to a complex federal statute." *Amos,* 2008 WL 4133864, at *2. By filing her amended petition in the probate court, Mrs. Huynh failed to avail herself of her administrative remedies, let alone exhaust them. Accordingly, the probate court lacked authority to consider her amended petition. The judgment dismissing Mrs. Huynh's amended petition is, therefore, affirmed.

All concur.