ARKANSAS DEPARTMENT of HEALTH and HUMAN
SERVICES *v.* Honorable Vann SMITH

06-6                                                    262 S.W.3d 167

Supreme Court of Arkansas
Opinion delivered September 13, 2007

*Richard B. Dahlgren*, Office of Chief Counsel, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Patricia V. Bell*, Ass't Att'y Gen., for appellee.

*Miller & Schrader, P.A.*, by: *Rebecca Winburn*, for Karen Blaylock, applicant.

Tom Glaze, Justice. The Arkansas Department of Health and Human Services (DHHS), petitions this court for a writ of prohibition instructing the Circuit Court of Pulaski County that it is without jurisdiction to grant Karen Blaylock's request for an increase of her Medicaid Community Spouse Monthly Income Allowance (CSMIA) and Medicaid Community Spouse Resource Allowance (CSRA) until her husband applies for Medicaid.

Karen Blaylock's husband, Alan Blaylock, became disabled in 1986; he suffered further injuries when he was beaten during a home-invasion robbery in 2005. As a result of the 2005 injuries, Alan required twenty-four-hour care and supervision to meet his daily needs, and he was institutionalized at Timber Ridge Ranch in early 2005.

On July 15, 2005, Karen filed an amended petition in the Pulaski County Circuit Court, seeking an order of support prior to applying for Medicaid benefits to help cover Alan's long-term care costs. DHHS, as the entity responsible for administering the Arkansas Medicaid program, was granted permission to intervene in the Blaylocks' suit. After being allowed to intervene, DHHS filed a motion for summary judgment, contending that, because Alan had not applied for Medicaid and DHHS had made no determination of his eligibility for benefits, Karen and Alan had failed to exhaust their administrative remedies. Accordingly, DHHS argued that the circuit court lacked jurisdiction over the matter.

On November 22, 2005, the circuit court denied DHHS's motion for summary judgment. In that order, the court deter-

mined that it had jurisdiction, finding that the Medicare Catastrophic Coverage Act (MCCA), 42 U.S.C. § 1396r-5, and the Arkansas Medical Services Manual provided implied authority for the court to allocate property outside an action for divorce or separate maintenance. In addition, the court found that the Blaylocks did not need to exhaust their administrative remedies prior to seeking a court order, because cases from other jurisdictions had found that Congress provided two alternative means by which a community spouse might obtain a higher resource or income allowance calculated under the MCCA — 1) through an administrative hearing under 42 U.S.C. § 1396r-(5)(e), or 2) by judicial order. Given these two alternative routes, the court found that it was within Karen's discretion to choose which method she wanted to use to obtain a higher allowance.

Following the circuit court's denial of DHHS's motion for summary judgment, DHHS sought a writ of prohibition from our court on January 4, 2006.[1] Prohibition is an extraordinary writ that is appropriate only when the trial court is wholly without jurisdiction. *Manila Sch. Dist. No. 15 v. Wagner*, 357 Ark. 20, 159 S.W.3d 285 (2004). The writ is appropriate only when there is no other remedy, such as an appeal, available. *Id.* Prohibition is a proper remedy when the jurisdiction of the trial court depends upon a legal rather than a factual question. *Id.* However, prohibition is never issued to prohibit a trial court from erroneously exercising its jurisdiction. *Id.*

In its first point, DHHS argues that the circuit court lacked jurisdiction to consider Karen's petition because of a failure to exhaust her administrative remedies. Generally, the doctrine of

---

[1] On May 16, 2006, Karen provided this court with documentation that Alan had passed away and that she had been lawfully appointed by the circuit court as administratrix of his estate. However, the documentation did not contain an order of revivor from the circuit court. We remanded the matter to the circuit court in order to determine whether such an order was appropriate. *See Ark. Dep't of Human Servs. v. Smith*, 366 Ark. 584, 237 S.W.3d 79 (2006) (per curiam).

The circuit court subsequently determined that Alan's death did not extinguish the cause of action and that revivor was appropriate. DHHS, joined by Karen, then asked this court to reinstate the petition. We granted the motion to reinstate the petition to this court's active docket on April 5, 2007, and directed the parties to supplement the record with the order of the circuit court on remand within fifteen days of that date, stating that we would "decide the case on the original briefs." *See Ark. Dep't of Human Servs. v. Circuit Court of Pulaski County*, 369 Ark. 345, 254 S.W.3d 726 (2007) (per curiam).

exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *See Centerpoint Energy Resources Corp. v. Circuit Court of Miller County*, 370 Ark. 190, 258 S.W.3d 336 (2007); *Austin v. Center Point Energy Arkla*, 365 Ark. 138, 226 S.W.3d 814 (2006). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Austin, supra; Dixie Downs, Inc. v. Arkansas Racing Comm'n*, 219 Ark. 356, 242 S.W.2d 132 (1951). Where a party has failed to exhaust his or her administrative remedies, the trial court lacks jurisdiction over the suit. *See Staton v. American Mfrs. Mut. Ins. Co.*, 362 Ark. 96, 207 S.W.3d 456 (2005).

The issue before us is (1) whether Karen was entitled to proceed directly to circuit court to obtain an order of support, or (2) whether she was first required to avail herself of the administrative procedures set out in the Medicare Catastrophic Coverage Act. DHHS urges this court to adopt the latter approach and conclude that, because Karen did not exhaust her administrative remedies, the circuit court lacked jurisdiction to consider her petition.

Before addressing this specific issue, however, it is necessary to examine the complexities of the MCCA on which Karen's petition was premised.

> The federal Medicaid program provides funding to States that reimburse needy persons for the cost of medical care. *See* Social Security Act, tit. XIX, as added, 79 Stat. 343, and as amended, 42 U.S.C. § 1396 *et seq.* (1994 ed. and Supp.V). "Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance" within boundaries set by the Medicaid statute and the Secretary of Health and Human Services. *Schweiker v. Gray Panthers*, 453 U.S. 34 (internal quotation marks omitted); § 1396a(a)(17) (1994 ed.) [footnote omitted]. In formulating those standards, States must "provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant." § 1396a(a)(17)(B) (emphasis added).

*Wisconsin Department of Health & Family Services v. Blumer*, 534 U.S. 473, 479 (2002).

The objective of the MCCA was to protect married couples when one spouse is institutionalized in a nursing home, so that the

spouse who continues to reside in the community (the so-called "community spouse") is not impoverished and has sufficient income and resources to live independently. *See, e.g., Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 798 (6th Cir. 1998) (citing H.R. Rep. No. 100-105(II), 100th Cong., 2d Sess. at 65 (1988), *reprinted in* 1988 U.S.C.C.A.N. 857, 888). In essence, the MCCA allows a couple to avoid having to spend all of the couple's assets on the institutionalized spouse's long-term medical and custodial care before the institutionalized spouse is eligible for Medicaid benefits.

Under the MCCA, which governs the treatment of income and resources for institutionalized spouses, income is allocated between spouses pursuant to a complex formula. *See* 42 U.S.C. § 1396r-5(b) & (d). That formula provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r-5(b)(1). The effect of the formula is to preserve the community spouse's income for that spouse, thus avoiding "pauperization" of that spouse, and to prevent that spouse's income from affecting the determination of whether the institutionalized spouse qualifies for Medicaid. *See Blumer,* 534 U.S. at 480. Section 1396r-5(b)(2) then sets out the rules to be used "[i]n determining the income of an institutionalized spouse or community spouse for purposes of the *post-eligibility* income determination described in subsection (d) of this section." (Emphasis added.)

Subsection (d) then provides a number of exceptions to those rules; those exceptions are "designed to ensure that the community spouse and other dependents have income sufficient to meet basic needs." *Blumer,* 534 U.S. at 481. Among those exceptions are the "Minimum Monthly Maintenance Needs Allowance" (MMMNA), 42 U.S.C. § 1396r-5(d)(3); the Community Spouse Monthly Income Allowance (CSMIA), 42 U.S.C. § 1396r-5(d)(2); and the Community Spouse Resource Allowance (CSRA), 42 U.S.C. § 1396r-5(f)(2).

These last two allowances are at issue in the instant case, as Karen's petition sought an order increasing her CSMIA and CSRA. Under the MCCA, the CSMIA comes into play when the income of the community spouse is insufficient to yield an income equal to or above the MMMNA. The CSMIA allows the community spouse to deduct the amount of that shortfall from the institutionalized spouse's income; the amount so deducted is then not considered "available" to the institutionalized spouse. As a

result, Medicaid will pay a greater portion of the institutionalized spouse's medical expenses than it would absent the CSMIA provision. *See Blumer,* 534 U.S. at 482.

In addition, for purposes of establishing the institutionalized spouse's Medicaid eligibility, a portion of the couple's assets is reserved for the community spouse. This reserved amount is the CSRA, which is determined by calculating the total of all of a couple's assets, and then allocating half to the community spouse. The CSRA is considered unavailable to the institutionalized spouse in the eligibility determination, but all resources above that amount must be spent before eligibility can be achieved. *See Blumer,* 534 U.S. at 483.

As just mentioned, Karen sought an order from the circuit court establishing her CSMIA and CSRA; DHHS, however, contended that the circuit court lacked jurisdiction to entertain Karen's petition. The crux of DHHS's argument is that, in enacting the MCCA, Congress did not create an independent, original cause of action in state courts whereby potential Medicaid applicants could get a preemptive court order attributing and allocating assets in anticipation of a future application for Medicaid. Because the Blaylocks had not applied for Medicaid, DHHS contends that their attempt to pursue relief in state court is without a jurisdictional foundation. We agree.

The circuit court determined that, under the MCCA, it had the "implied authority" to make a pre–Medicaid-eligibility-determination allocation of the Blaylocks' assets. That decision was premised largely on two provisions in the MCCA that refer to a "court order." Section 1396r-5(d)(5) declares that, "[*i*]*f a court has entered an order* against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall be not less than the amount of the monthly income so ordered." (Emphasis added.) In addition, section 1396r-5(f)(3) provides that, "[*i*]*f a court has entered an order* against an institutionalized spouse for the support of the community spouse, section 1396p of this title shall not apply to amounts of resources transferred pursuant to such order for the support of the spouse or a family member[.]" (Emphasis added.)

DHHS counters, however, that reading the statute in its entirety makes it clear that any allocation of a couple's assets can only occur after a determination of Medicaid eligibility has been made. For example, DHHS notes language from § 1396r-5(b)(2)

that speaks of the attribution of income "for purposes of the *post-eligibility* income determination." (Emphasis added.) Similarly, § 1396r-5(d)(1) permits deductions or allowances from the institutionalized spouse's income "*after an institutionalized spouse is determined . . . to be eligible* for medical assistance." (Emphasis added.)

Congress has declared that "the determination of eligibility for medical assistance under the [State] plan [for medical assistance] *shall be made by the State or local agency administering the State plan*[.]" 42 U.S.C. § 1396a(a)(5) (emphasis added). In Arkansas, that agency is the Department of Health & Human Services. *See, e.g.,* Ark. Code Ann. § 25-10-129(a)(2)(C) (Repl. 2002) (recognizing that DHHS "is presently charged with, among other things, all welfare activity in the state, including . . . [m]edical assistance."); Ark. Code Ann. § 20-10-129(a)(4) (declaring it the legislature's intent to give DHHS the authority to adopt rules in conformity with federal laws); Ark. Code Ann. § 20-77-101(a) (Repl. 2001) (referring to the "Medicaid medical assistance program administered by the Department of Human Services"). DHHS accordingly reasons that it is the only body empowered or authorized to make Medicaid determinations, including determinations concerning the allocation of assets within the context of the CSRA and CSMIA.

Karen responds primarily by pointing to § 1396r-5(f)(2) & (3). Subsection (f) generally deals with permitting the transfer of resources to the community spouse; section 1396r-5(f)(2) defines the CSRA in part as the "amount by which . . . the greatest of . . . the amount transferred under a court order under paragraph (3) exceeds the amount of resources otherwise available to the community spouse[.]" Paragraph (3) of subsection (f), as mentioned above, declares that "*if a court has entered an order against an institutionalized spouse for the support of the community spouse,* section 1396p of this title shall not apply to amounts of resources transferred pursuant to such order for the support of the spouse or a family member[.]"

Focusing on the above highlighted language, Karen then goes on to argue that Congress used the word "shall" in § 1396r-5(f)(3), thereby making the language mandatory. However, what Karen's argument fails to recognize is that the word "shall" does not actually appear to direct DHHS to apply the court's order. Reading the statute closely reveals that what the Medicaid-administering agency "shall" do is to not apply 42 U.S.C. § 1396p

to resources transferred pursuant to such order. Section 1396p deals with liens, adjustments and recoveries, and transfers of assets. That statute discusses when a lien may be imposed against the property of an individual who has been receiving medical assistance.

Moreover, the fallacy in Karen's reliance on subsections (f)(2) and (f)(3) becomes apparent when one reads § 1396r-5(f)(1), which provides as follows:

> An institutionalized spouse may, without regard to section 1396p(c)(1) of this title, transfer an amount equal to the community spouse resource allowance (as defined in paragraph (2)), but only to the extent the resources of the institutionalized spouse are transferred to (or for the sole benefit of) the community spouse. *The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility,* taking into account such time as may be necessary to obtain a court order under paragraph (3).

(Emphasis added.) The emphasized language makes it clear that the transfers between an institutionalized spouse and a community spouse, as specified in this statute, must all transpire *after* a determination has been made about the institutionalized spouse's Medicaid eligibility.

Given this language, we must conclude that DHHS's argument is correct. As discussed above, Congress has declared that Medicaid eligibility "shall be made by the State or local agency administering the State [Medicaid] plan." *See* 42 U.S.C. § 1396a(a)(5). In Arkansas, that agency is DHHS; in turn, DHHS has promulgated the rules and regulations governing Medicaid applications and eligibility. *See* Ark. Code Ann. § 20-10-129(a)(4). Thus, because DHHS is the entity charged with administering the Arkansas Medicaid Program, it — rather than the circuit court — is the sole entity that may determine whether a Medicaid applicant is eligible for Medicaid, as well as for any of the deductions or allowances permitted under the MCCA.

Moreover, the MCCA provides a means for administrative review of DHHS's decisions regarding eligibility. Under 42 U.S.C. § 1396r-5(e), if the applicant disagrees with DHHS's decision, that person can seek a review of that decision. Under § 1396r-5(e)(1), once the Medicaid-administering agency determines eligibility for benefits, the State is to notify the applicant and

the spouse of the amount of allowances and how those allowances were computed. If either spouse disagrees with DHHS's determination, § 1396r-5(e)(2) provides for a review of that decision, as follows:

>   (A)  In general

>   If either the institutionalized spouse or the community spouse is dissatisfied with a determination of —

>   (i)  the *community spouse monthly income allowance*;

>   (ii)  *the amount of monthly income otherwise available to the community spouse* (as applied under subsection (d)(2)(B) of this section);

>   (iii)  the computation of the spousal share of resources under subsection (c)(1) of this section;

>   (iv)  the attribution of resources under subsection (c)(2) of this section; or

>   (v)  the *determination of the community spouse resource allowance* (as defined in subsection (f)(2) of this section);

>   such spouse is entitled to a fair hearing described in section 1396a(a)(3) of this title with respect to such determination if an application for benefits under this subchapter has been made on behalf of the institutionalized spouse. Any such hearing respecting the determination of the community spouse resource allowance shall be held within 30 days of the date of the request for the hearing.

(Emphasis added.)

Should the applicant then still disagree with DHHS's determinations, at that point, the applicant may seek judicial review under the Administrative Procedure Act, Ark. Code Ann. § 25-15-101 et seq. (Repl. 2002).[2] Only at that point — i.e., once the applicant has exhausted his or her administrative remedies — does

---

[2]  Ark. Code Ann. § 20-10-129(c) (Repl. 2002) provides that "[a]ll rules promulgated pursuant to this section shall be promulgated in conformity with the Arkansas Administrative Procedure Act, § 25-15-201[.]"

the state court system come into play. This conclusion comports with our court's consistent holdings that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies. *See, e.g., Ark. Dep't of Health & Human Servs. v. R.C.*, 368 Ark. 660, 249 S.W.3d 797 (2007); *Wright v. Ark. State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

In sum, DHHS is the sole entity charged with administering Medicaid and determining eligibility for Medicaid benefits. The fact that Congress used language to the effect of "if a court has entered an order of support" — without any further explanation of the circumstances in which such an order might be entered — is insufficient to confer jurisdiction, even impliedly, on the circuit court. This is particularly so when one considers that sections 1396r-5(d)(5) & (f)(3) only generally reference an order of spousal support; they do not mention a court-ordered CSRA, CSMIA, or MMMNA. One who wishes to apply for Medicaid must go through the process established by Congress and the State and cannot do an "end run" around that process by seeking a preemptive court order of spousal support.

■ ■ The Blaylocks failed to avail themselves of their administrative remedies, let alone exhaust them, and as such, the circuit court was utterly without jurisdiction to consider the Blaylocks' petition. Further, because DHHS was without another available remedy, such as an appeal (as this case comes to us after the denial of a motion for summary judgment — a non-appealable order), the writ of prohibition will lie in this case. *See Ouachita Railroad v. Circuit Court of Union County*, 361 Ark. 333, 206 S.W.3d 811 (2005) ("[A] writ of prohibition is a proper remedy for lack of subject-matter jurisdiction in the trial court even when a petitioner is not entitled to an appeal from a denial of a motion for summary judgment."); *Ramirez v. White County Circuit Court*, 343 Ark. 372, 38 S.W.3d 298 (2001) ("[I]f there is no jurisdiction, the only way petitioners can obtain review by this court is by way of a petition for a writ of prohibition. Therefore, a petition for writ of prohibition is a proper method to obtain review of jurisdiction by this court.").

Because we grant DHHS's petition for writ of prohibition on this point, it is unnecessary to address any remaining issues.

Petition for writ of prohibition granted.