# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01984-SCT

*JO CAROL ALFORD, INDIVIDUALLY, AND AS
EXECUTRIX OF THE ESTATE OF ARTHUR
RANDALL ALFORD, DECEASED*

*v.*

*MISSISSIPPI DIVISION OF MEDICAID*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/2008 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RONALD C. MORTON |
| | A. ELIZABETH WHITAKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WILLIAM H. MOUNGER |
| | CHARLES P. QUARTERMAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/25/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     This appeal presents a case of first impression and requires us to interpret the "spousal

impoverishment" provisions of the Medicare Catastrophic Coverage Act of 1988 (MCCA),

codified at 42 U.S. Code Section 1396r-5 (2006). Specifically, this Court must determine

whether our state courts have subject matter jurisdiction over petitions requesting relief under

Chapter 42 of the United States Code, Section 1396r-5, prior to a determination of Medicaid eligibility. Finding that the chancery court did not have jurisdiction, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Prior to filing an application for Medicaid, Jo Carol Alford filed a petition in chancery court to increase the community spouse resource allowance (CSRA) and the minimum monthly maintenance needs allowance (MMMNA) under 42 U.S. Code Section 1396r-5. She averred that her husband, Arthur Randall Alford, suffered from multiple sclerosis, and the maximum MMMNA and CSRA allowed by the Mississippi Division of Medicaid (Division) were insufficient to prevent her impoverishment once her husband entered a nursing home and applied for Medicaid. In its answer, the Division averred that no application had been filed on behalf of Mr. Alford for Medicaid eligibility, and that the Alfords had failed to exhaust administrative remedies.

¶3. At a hearing on the matter, Mrs. Alford's counsel asserted the court had jurisdiction under 42 U.S. Code Section 1396r-5, as well as equitable jurisdiction to rule on domestic relations matters. Mrs. Alford's counsel also argued that under state regulations, the Division was prohibited from awarding a greater share of resources above the federal maximum, but that the regulations recognized the court's authority to do so. Counsel proceeded to question Mrs. Alford and a certified public accountant regarding the Alfords' finances and the projected depletion of their income and assets once Mr. Alford was placed in a nursing home. At the close of the hearing, counsel for Mrs. Alford requested alternative relief in the form

2

of a qualified domestic relations order (QDRO), transferring Mr. Alford's retirement assets in the amount of $400,000 to Mrs. Alford.

¶4. The Division did not cross-examine Mrs. Alford or the accountant, maintaining the court lacked jurisdiction. The Division argued that it had sole authority and jurisdiction to consider the matter, and that the chancery court was limited to judicial review of the agency's final decision.

¶5. The chancery court found that it had jurisdiction to grant separate maintenance via a QDRO. It further held that it had no authority to grant relief under 42 U.S. Code Section 1396r-5 prior to the Alfords exhausting their administrative remedies. Mrs. Alford timely filed her notice of appeal, objecting to the chancery court's finding that it lacked jurisdiction under 42 U.S. Code Section 1396r-5.

¶6. During the pendency of this appeal, Mr. Alford passed away. Mrs. Alford filed a motion to substitute Arthur Randall Alford, individually, with the executrix of his estate, Jo Carol Alford. Mrs. Alford asserted that the "Division of Medicaid will, no doubt, argue that the issues before this Court are moot . . . [but] the sole issue of whether subject matter jurisdiction exists in the Chancery Court to increase Community Spouse Resource Allowance and Minimum Monthly Maintenance Needs Allowance remains relevant in this and future cases around the state." This Court granted the motion to substitute.

## DISCUSSION

### I. WHETHER MR. ALFORD'S DEATH RENDERS THIS CASE MOOT.

3

¶7. The Division asserts that the action is now moot. The Division argues that Mr. Alford failed to apply for Medicaid benefits prior to his death, and that the executrix of Mr. Alford's estate failed to apply "within the appropriate time period after his death." Mrs. Alford concedes the controversy is now moot, but argues the Court should apply the "public-interest" exception and decide the merits of this action.

¶8. This Court has ruled that "[c]ases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot." *Monaghan v. Blue Bell, Inc.*, 393 So. 2d 466, 466 (Miss. 1980). "This Court will not adjudicate moot questions." *Allred v. Webb*, 641 So. 2d 1218, 1220 (Miss. 1994) (citations omitted). However, there is an exception, and the mootness rule will not be applied "when the questions involved are matters affecting the public interest." *Id.* We have ruled "there is an exception to the general rule as respects moot cases, when the question concerns a matter of such nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct." *Sartin v. Barlow ex rel. Smith*, 196 Miss. 159, 16 So. 2d 372, 377 (1944).

¶9. We find that this case presents such a matter of public interest. As our current population continues to age and our state's coffers become more strained, we find that this dispute falls within the public-interest exception. Medicaid impacts many Mississippians, and we therefore find it prudent to "declare . . . a rule for future conduct" regarding the jurisdiction of the courts to increase the MMMNA and CSRA. *Id.*

4

**II. WHETHER OUR TRIAL COURTS HAVE SUBJECT MATTER JURISDICTION UNDER 42 U.S. CODE SECTION 1396r-5 TO INCREASE THE MMMNA AND THE CSRA PRIOR TO AN AGENCY DETERMINATION OF MEDICAID ELIGIBLITY.**

A.      Background

¶10.    The Medicaid program is part of Title XIX of the Social Security Act, enacted in 1965. 42 C.F.R. § 430.0 (2009). It is jointly financed by the state and federal governments to provide "medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependant children or qualified pregnant women or children." *Id.* State participation is voluntary, and each state determines eligibility within "broad Federal rules."[1] *Id.*

¶11.    In order to be eligible for Medicaid, the applicant must meet certain financial and non-financial criteria. *See* Miss. Code Ann. § 43-13-115 (Rev. 2009). Married applicants who receive long-term care (i.e., institutionalized spouses) have specific limitations on their income and resources.[2] The Division must determine the couple's income and resources and allocate resources between the institutionalized spouse and the community spouse when determining

[1]The Centers of Medicare and Medicaid Services (CMS) is the federal agency that implements the Medicaid program. *See* CMS website, located at http://www.cms.hhs.gov (last accessed February 22, 2010).

[2]In 2009, an institutionalized applicant could have a monthly income of up to $2,022 and total resources of up to $4,000. Mississippi Division of Medicaid, Guidelines for the Aged, Blind, and Disabled Living in Nursing Homes, located at http://www.medicaid.ms.gov (last accessed February 22, 2010) (click on Medicaid Eligibility).

eligibility.  *See* 42 U.S.C. §1396r-5 (2006).  This determination is governed by 42 U.S. Code

Section 1396r-5, the statute at issue in this case.

<blockquote>B.  42 U.S.C. § 1396r-5</blockquote>

¶12.    The spousal-impoverishment provisions of the MCCA affect the allocation of income

and resources between the institutionalized and community spouses.  *See* 42 U.S.C. § 1396r-5

(2006).  The statute provides rules for treatment of income and resources during the eligibility

process and post-eligibility.  *See id.*

¶13.    In computing resources for purposes of eligibility, the state agency must assess the

couple's "total value of the resources."[3]   42 U.S.C. §  1396r-5(c)(1)(A)(I) (2006).   The

community spouse is allowed to retain a community spousal resource allowance (CSRA), which

is excluded from the eligibility calculation and is subject to a statutory cap.[4]  ***Wis. Dep't of***

***Health & Family Servs. v. Blumer***, 534 U.S. 473, 482-83, 122 S. Ct. 962, 151 L. Ed. 2d 935

(2002) (citing 20 C.F.R. § 416.1205).  The MCCA specifically defines the CSRA as follows:

> [T]he "community spouse resource allowance" for the community spouse is an
> amount (if any) by which –
> > (A) the greatest of –

---

[3]The agency will calculate the total amount of the couple's resources and allocate half
to each spouse (spousal share).  42 U.S.C. § 1396r-5(c)(1)(A) (2006).

[4]In 2009, this maximum amount was $109,560. CMS website, 2009 SSI and Spousal
I m p o v e r i s h m e n t     S t a n d a r d s ,     l o c a t e d     a t
http://www.cms.hhs.gov/MedicaidEligibility/Downloads/1998-2010SSIFBR122909.pdf (last
accessed February 22, 2010). The State standard for the CSRA is the maximum  standard
permitted by federal law.  Mississippi Division of Medicaid website, Mississippi Division
of  Medicaid  State  Plan  at  26a  of  Attachment  2.6-A,  located  at
http://www.medicaid.ms.gov/MississippiStatePlan.aspx (last accessed February 22, 2010).

(i) $12,000 (subject to adjustment under subsection (g) of this section [which governs inflation]), or, if greater (but not to exceed the amount specified in clause (ii)(II)) an amount specified under the State plan,
(ii) the lesser of (I) the spousal share computed under subsection (c)(1) of this section, or (II) $60,000 (subject to adjustment under subsection (g) of this section),
(iii) *the amount established under subsection (e)(2) of this section* [Fair hearing provision]; or
(iv) *the amount transferred under a court order under paragraph (3)*[.][5]

42 U.S.C. § 1396r-5(f)(2)(A) (2006) (emphasis added). McCormick's treatise provides the

following explanation for understanding the statute's definition of the CSRA:

For example, the Medicaid statute permit[s] the community spouse to keep a "community spouse resource allowance" (CSRA) equal to the greatest of $12,000 adjusted for inflation or one half of the couple's resources up to $60,000 adjusted for inflation. The state may also simply permit the community spouse to retain resources up to the inflation adjusted $60,000 figure. Alternatively, by court order, or by decision of an administrative judge (where additional resources are necessary to produce income to support the community spouse), the community spouse may be permitted to keep a greater amount.

Harvey L. McCormick, *Medicare and Medicaid Claims and Procedures* § 28:17 (4th ed. 2005).

"[An] enhanced CSRA will reduce the resources the statute deems available for the payment

of medical expenses; accordingly, the institutionalized spouse will become eligible for Medicaid

sooner." ***Blumer***, 534 U.S. at 483-84.

---

[5]Paragraph (3) relates to "[t]ransfers under court orders" and provides that:
If a court has entered an order against an institutionalized spouse for the support of the community spouse, section 1396p of this title shall not apply to amounts of resources transferred pursuant to such order for the support of the spouse or family member (as defined in subsection (d)(1) of this section). 42 U.S.C. § 1396r-5(f)(3) (2006).

¶14. Once the institutionalized spouse becomes eligible, the agency must determine the amount of income "that is to be applied monthly to payment for the costs of care in the institution." 42 U.S.C. § 1396r-5(d)(1) (2006). In determining the amount of income that is to be applied for the cost of care, the statute allows various protected amounts to be deducted from the institutionalized spouse's income, one being the community spouse monthly income allowance (CSMIA). 42 U.S.C. § 1396r-5(d)(1)(B) (2006). The CSMIA is calculated based upon the minimum monthly maintenance needs allowance (MMMNA). 42 U.S.C. § 1396r-5(d)(2) (2006). The statute provides the following definition of the CSMIA:

> In this section (*except as provided in paragraph (5)*), the "community spouse monthly income allowance" for a community spouse is an amount by which –
>      (A) *except as provided in subsection (e)* of this section, *the minimum monthly maintenance needs allowance* (established under and in accordance with paragraph (3)) for the spouse, exceeds
>      (B) the amount of monthly income otherwise available to the community spouse (determined without regard to such an allowance).

42 U.S.C. § 1396r-5(d)(2) (2006) (emphasis added). The MMMNA is established by each state based upon the official poverty line and an excess-shelter allowance; however, it is subject to a statutory cap.[6] 42 U.S.C. § 1396r-5(d)(3) (2006).

---

[6]In 2009, the maximum MMMNA was $2,739. Mississippi Division of Medicaid website, Guidelines for the Aged, Blind and Disabled Living in Nursing Homes, located at http://www.medicaid.ms.gov (last accessed February 22, 2010) (click on Medicaid Eligibility). The Division allows the maximum under federal law. Mississippi Division of Medicaid website, State Plan at 4c of Attachment 2.6A, located at http://www.medicaid.ms.gov/MississippiStatePlan.aspx (last accessed February 22, 2010).

¶15.    The language "except as provided in paragraph (5)" (in the definition of the CSMIA)

references the following provision, which is also relevant to this case:

> **(5) Court ordered support**
> If a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall not be less than the amount of the monthly income so ordered.

42 U.S.C. § 1396r-5(d)(5) (2006).

¶16.    The definition of the CSMIA references another relevant provision, subsection (e)(2),

which is the fair-hearing provision:

> **(2) Fair hearing**
> **(A) In general**
> If either the institutionalized spouse or the community spouse is dissatisfied with the determination of –
> (i) the community spouse monthly income allowance;
> (ii) the amount of the monthly income otherwise available to the community spouse (as applied under subsection (d)(2)(B) of this section;
> (iii) the computation of the spousal share of resources under subsection (c)(1) of this section;
> (iv) the attribution of resources under subsection (c)(2) of this section; or
> (v) the determination of the community spouse resource allowance (as defined in subsection (f)(2) of this section);
> such spouse *is entitled to a fair hearing* described in section 1396a(a)(3) of this title with respect to such determination *if an application for benefits under this subchapter has been made on behalf of the institutionalized spouse.* Any such hearing respecting the determination of the community spouse resource allowance shall be held within 30 days of the date of the request for the hearing.
> **(B) *Revision of minimum monthly needs allowance***
> If either such spouse establishes that the community spouse needs income, above the level otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional

9

circumstances resulting in significant financial distress, there shall be substituted, for the minimum monthly maintenance needs allowance in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.

**(C) *Revision of the community spouse resource allowance***
If either such spouse establishes that the community spouse resource allowance (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance under subsection (f)(2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance.

42 U.S.C. § 1396r-5(e)(2) (2006) (emphasis added).

C.  Merits of the Case

¶17.    When reviewing an issue of subject matter jurisdiction, this Court applies a de novo standard of review.  ***Schmidt v. Catholic Diocese of Biloxi***, 18 So. 3d 814, 821 (Miss. 2009).

¶18.    Mrs. Alford contends that the "unambiguous" language of the MCCA provides our state courts with authority to increase the CSRA and the MMMNA.  Mrs. Alford points to 42 U.S. Code Section 1396r-5(d)(5) and 42 U.S. Code Section 1396r-5(f)(3) in support of her argument. As noted *supra*, those provisions provide that:

**(5)  Court ordered support**
If a court *has entered* an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall not be less than the amount of the monthly income so ordered.

42 U.S.C. § 1396r-5(d)(5) (2006) (emphasis added).

**(3)  Transfers under court orders**
If a court *has entered* an order against an institutionalized spouse for the support of the community spouse, section 1396p of this title shall not apply to amounts

10

of resources transferred pursuant to such order for the support of the spouse or a family member (as defined in subsection (d)(1) of this section).

42 U.S.C. § 1396r-5(f)(3) (2006) (emphasis added). Mrs. Alford argues that the phrase "has entered" indicates that a court order must be entered prior to an application for Medicaid benefits. She asserts that 42 U.S. Code Section 1396r-5 provides for two, alternative mechanisms for increasing the MMMNA and CSRA: (1) by court order prior to filing a Medicaid application, and (2) filing an application for Medicaid and increasing the MMMNA and CSRA through the fair-hearing process under 42 U.S. Code Section 1396r-5(e). In support of her argument, Mrs. Alford cites *Blumberg v. Tennessee Department of Human Services*, 2000 WL 1586454 (Tenn Ct. App. Oct. 25, 2000), and *M.E.F. v. A.B.F.*, 925 A.2d 12 (N.J. Super. Ct. App. Div. 2007).

¶19.    In *Blumberg*, the plaintiff filed a petition in circuit court requesting a transfer of his wife's assets and an increase in the MMMNA. *Blumberg*, 2000 WL 1586454 at *1. The court ordered the plaintiff's wife to pay all of her monthly income to her husband as a "community spouse allowance." *Id.* Thereafter, the plaintiff filed a Medicaid application on behalf of his wife. *Id.* While his wife was approved for Medicaid, the plaintiff was denied an increase in his income allocation. *Id.* The agency ordered that the wife's monthly income was to be applied to her cost of care. *Id.*

¶20.    On appeal, the Tennessee Court of Appeals determined that the agency had exceeded its jurisdiction by reversing the circuit court's order. *Id.* at *2. In deciding this issue, the appellate court determined that the language of 42 U.S. Code Section 1396r-5(d)(5) and 42 U.S. Code

11

Section 1396r-5(e) of the MCCA provided "two absolute alternative methods of setting a spouse's allowance and we are bound to recognize both procedures." *Id.* at *2-*3. Accordingly, the court held the agency was without authority to ignore the circuit court's order. *Id.* In support of its holding, the court reasoned that "had the legislature intended a different interpretation, it could simply have stated in precise language that the administrative process is the only procedure available." *Id.*

¶21. Similar to the Tennessee Court of Appeals, the New Jersey Superior Court has implicitly ruled that the MCCA provides two independent means to increase the MMMNA. *M.E.F. v. A.B.F.*, 925 A.2d 12 (N.J. Super. Ct. App. Div. 2007). In *M.E.F.*, the institutionalized spouse had been receiving Medicaid benefits when the community spouse petitioned the family court for separate maintenance under the state's domestic laws. *Id.* at 15. The family court denied the petition for "lack of factual support and procedural inadequacies." *Id.* Thereafter, the community spouse petitioned the state agency for an increase in her MMMNA, which the agency granted. *Id.*

¶22. After obtaining an increase in the MMMNA, the community spouse renewed her motion for separate maintenance in family court. *Id.* At a hearing on the motion, the community spouse argued for an additional increase in her MMMNA. *Id.* at 15-16. The family court denied the motion, ruling that the "MCCA's provisions regarding court orders of support applied only to orders already in existence [prior to institutionalization]." *Id.* at 16.

¶23. On appeal, the Superior Court held that the community spouse's effort to obtain a court order after she had requested an increase in the MMMNA from the agency constituted

impermissible "parallel litigation and a form of forum shopping." *Id.* at 20. The court reasoned that, "having embarked upon the administrative path by receiving and challenging the MMMNA provided to her, [the community spouse] is limited to that path until a final administrative determination has been reached." *Id.* at 22.

¶24. While the courts in *Blumberg* and *M.E.F.* ruled only upon the issue of jurisdiction to increase the MMMNA, the Superior Court of the District of Columbia has ruled that the MCCA provides two alternative methods of increasing the MMMNA *and* the CSRA. *In re Estate of Tyler*, 2002 WL 1274125, *3 (D.C. Super. May 30, 2002). In *Tyler*, the plaintiff petitioned the trial court for a transfer of all the institutionalized spouse's assets and an order awarding her income and resources for her support as a community spouse. *Id.* at *1. The plaintiff filed her petition after her spouse had applied for Medicaid, but prior to Medicaid's determination of the spouse's eligibility. *Id.* at *1-*2. During the pendency of the court proceedings, the state agency denied Medicaid benefits due to excess resources. *Id.* at *3.

¶25. While the trial court denied the petition, it found that, under the MCCA, the community spouse may seek either administrative or judicial relief to increase the MMMNA and the CSRA. *Id.* at *2-3 (citing 42 U.S.C. § 1396r-5(e) and 42 U.S.C. § 1396r-5(d)(5)). After reviewing the "express language" of 42 U.S. Code Section 1396r-5, the court stated "[t]here can be no doubt . . . that Congress intended that spousal support orders for income not only be taken into account [by the agency] in calculating income allowances, but also bypass the standard Medicaid rules regarding resources and income." *Id.* at *6 (citing 42 U.S.C. §§ 1396r-5(d)(2) and (A), (d)(5),

13

and (f)(2)(A)(iv) and (f)(3)). In other words, the court found that court orders "preempt the spousal resource and income allowances" under the MCCA. *Id.*

¶26. The Division urges this Court to adopt the holding of *Arkansas Department of Health & Human Services v. Smith*, 262 S.W.3d 167 (Ark. 2007), which is contrary to *Blumberg*, *M.E.F.*, and *Tyler*. The Arkansas Supreme Court held that the state agency charged with administering Medicaid is the "*sole entity* that may determine whether a Medicaid applicant is eligible for Medicaid, *as well as for any of the deductions or allowances permitted under the MCCA.*" *Ark. Dep't of Health & Human Servs.*, 262 S.W.3d at 173 (emphasis added). In reaching its decision, the appellate court analyzed those MCCA provisions that refer to a "court order," 42 U.S. Code Sections 1396r-5(d)(5), (f)(2)-(3). *Id.* at 172-73. The court agreed with the agency's argument that "reading the statute in its entirety makes it clear that any allocation of a couple's assets can only occur after a determination of Medicaid eligibility has been made." *Id.* at 172. The court noted that Section 1396r-5(b)(2) "speaks of the attribution of income 'for purposes of the *post-eligibility* income determination'" and that Section 1396r-5(d)(1) "permits deductions or allowances from the institutionalized spouse's income '*after an institutionalized spouse is determined . . . to be eligible* for medical assistance.'" *Id.* (quoting 42 U.S.C. §§ 1396r-5(b)(2), (d)(1)). The court noted that Congress expressly had authorized state and local agencies to determine Medicaid eligibility under 42 U.S. Code Section 1396(a)(a)(5). *Id.* Furthermore, the court focused on the language of Section 1396r-5(f)(2)-(3) and provided the following analysis, which we find especially relevant to this case:

14

[The community spouse] then goes on to argue that Congress used the word "shall" in § 1396r-5(f)(3), thereby making the language mandatory. However, what [the community spouse's] argument fails to recognize is that the word "shall" does not actually appear to direct DHHS to apply the court's order. Reading the statute closely reveals that what the Medicaid-administering agency "shall" do is not apply 42 U.S.C. § 1396p to resources transferred pursuant to such order. Section 1396p deals with liens, adjustments and recoveries, and transfers of assets. That statute discusses when a lien may be imposed against the property of an individual who has been receiving medical assistance.

Moreover, the fallacy in [the community spouse's] reliance on subsections (f)(2) and (f)(3) becomes apparent when one reads § 1396r-5(f)(1), which provides as follows:

> An institutionalized spouse may, without regard to section 1396p(c)(1) of this title, transfer an amount equal to the community spouse resource allowance (as defined in paragraph(2)), but only to the extent the resources of the institutionalized spouse are transferred to (or for the sole benefit of) the community spouse. *The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility*, taking into account such time as may be necessary to obtain a court order under paragraph (3).

(Emphasis added.) The emphasized language makes it clear that the transfers between an institutionalized spouse and a community spouse, as specified in this statute must, transpire *after* a determination has been made about the institutionalized spouse's Medicaid eligibility.

*Id.* at 172-73.

¶27. The court further noted that the community spouse could seek administrative review of the CSMIA (the community spouse's monthly income allowance), and the CSRA under the MCCA's fair-hearing provisions and then seek judicial review. *Id.* at 173-74 (citing 42 U.S.C. § 1396r-5(e)). The court ruled that agencies are "better equipped than courts, by specialization, insight and experience, and more flexible procedures to determine and analyze underlying legal

15

issues affecting their agencies." *Id.* The court concluded that the "court order" language was "insufficient to confer jurisdiction, even impliedly, on the circuit court[,]" especially given the fact that "sections 1396r-5(d)(5) & (f)(3) only generally reference an order of spousal support; they do not mention a court-ordered CSRA, CSMIA, or MMMNA." *Id.*

¶28. The Missouri Court of Appeals also has held that its state courts are without jurisdiction under the MCCA. *Amos v. Estate of Amos*, 267 S.W.3d 761 (Mo. Ct. App. 2008); *see also Huynh v. King*, 269 S.W.3d 540 (Mo. Ct. App. 2008). Finding that the agency had primary jurisdiction, the Missouri Court of Appeals found:

> The application of Medicaid regulations demands administrative expertise. A single state agency must oversee the program. Uniformity of result is critical. None of these objectives is furthered by conferring parallel jurisdiction on a probate court, and the Act's mere reference to an "amount transferred under a court order," without further explanation, is insufficient to do so.

*Id.*

¶29. We find that the opinions of the Arkansas Supreme Court and the Missouri Court of Appeals provide a more compelling interpretation of the spousal-impoverishment provisions. Notably, 42 U.S. Code Section 1396r-5(e) specifically provides a mechanism for administrative review and revision of the CSMIA, MMMNA, and CSRA. Furthermore, Mississippi Code Section 43-13-116 sets forth the administrative-hearing process and provides that an aggrieved claimant "is entitled to seek judicial review in a court of proper jurisdiction." Miss. Code Ann. § 42-13-116(3)(e)(xvii) (Rev. 2009). This Court previously has ruled that "'where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will act.'" *Davis v. Barr*, 157 So. 2d 505, 507 (Miss. 1963) (quoting 2 Am.

16

Jur. 2d *Administrative Law*, § 595, p. 426). This Court also has described the doctrine of primary jurisdiction, which is relevant to the case *sub judice*:

> the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal, where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered.

***Ill. Cent. R. Co. v. M.T. Reed Const. Co.***, 51 So. 2d 573, 575 (Miss. 1951) (quoting 42 Am. Jur. *Public Administrative Law*, § 254). However, Mrs. Alford argues that the doctrine of administrative remedies should not apply, as the Division's rule states:

> The CS [community spouse] share of total countable resources is the maximum allowed under federal law. In order for a CS to receive a share larger than the federal maximum, *a court order would be required granting the CS a greater share of total resources after Medicaid had made a decision regarding spousal shares.*

Code Miss. R. 13 000 036 at § 9210 (Rev. 1999) (emphasis added). Mrs. Alford argues that the Division's own rules limit its authority to grant the requested relief, and as such, an administrative appeal is futile and a waste of resources.

¶30. We note that this agency rule applies only to "countable resources" and does not specifically address the agency's ability to raise the MMMNA (the needs allowance) above the federal maximum. We reaffirm that the "rule requiring exhaustion of administrative remedies will be applied even though a party contends that the action of the administrative agency is beyond the power and jurisdiction of the agency." ***Everitt v. Lovitt***, 192 So. 2d 422, 428 (Miss.

17

1966). Furthermore, the relevant inquiry concerns the provisions of 42 U.S. Code Section 1396r-5, which the Division is bound to follow.

¶31. Keeping in mind the doctrines of exhaustion of administrative remedies and primary jurisdiction, we hold that the statutory language "if a court has entered an order" is insufficient to confer upon the courts parallel jurisdiction to increase the MMMNA and CSRA. We conclude that the plain language of the MCCA does not confer jurisdiction upon our state courts to increase the MMMNA and CSRA prior to an exhaustion of administrative remedies.

## CONCLUSION

¶32. We affirm the chancery court's holding that it was without subject matter jurisdiction to increase the MMMNA and CSRA prior to the Alfords exhausting their administrative remedies.

¶33. **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, KITCHENS AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., NOT PARTICIPATING.**